**JP MORGAN CHASE BANK,
N.A., Plaintiff,**

v.

**Louis J.K.J. REIJTENBAGH
et al., Defendants.**

No. 09 Civ. 3747.

United States District Court,
S.D. New York.

May 14, 2009.

Zachary Greg Newman, Hahn & Hessen LLP, New York, NY, for Plaintiff.

Edward Patrick Boyle, Edmund M. O'Toole, Venable LLP, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

### I. BACKGROUND

Plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan") originally filed this action in New York Supreme Court, Bronx County (the "State Court"), on April 1, 2009, seeking to recover $23 million outstanding from a $50 million promissory note (the "Promissory Note") from defendants Louis J.K.J. Reijtenbagh ("Louis Reijtenbagh"), Jacco (a/k/a/ Jacob) L.J.C. Reijtenbagh, Edgar (a/k/a Ano) J.L.C. Reijtenbagh, and Monte–Carlo Art S.A. ("Monte Carlo"), (collectively, "Defendants"). JP Morgan sought a temporary restraining order and a preliminary injunction. On April 1, 2009, the State Court issued an ex parte temporary restraining order enjoining Defendants from transferring or taking action with respect to various pieces of art that Monte Carlo had pledged to JP Morgan as collateral for the Promissory Note (the "Art Collateral").

JP Morgan then sought ex parte orders of seizure and attachment (the "Ex Parte Orders") to permit JP Morgan to take immediate possession of the Art Collateral. The State Court granted the application, and JP Morgan executed the Ex Parte Orders on April 4 and April 6, 2009. On April 9, 2009, by order to show cause, JP Morgan filed a motion to (1) confirm the Ex Parte Orders, (2) permit JP Morgan to conduct immediate discovery as to the missing Art Collateral, and (3) require Defendants to produce the Art Collateral that was missing from the apartment in which the art was required to be kept.

Defendants removed the action to federal court on April 13, 2009. JP Morgan sought to remand the action to the State Court. By Decision and Order dated April 30, 2009, the Court denied the remand application and directed JP Morgan to submit a reply to Defendants' opposition to JP Morgan's motion to confirm the Ex Parte Orders.

The Court has reviewed the parties' submissions regarding the motion to confirm the Ex Parte Orders.[1] For the reasons discussed below, the motion to confirm is GRANTED. JP Morgan's request for leave to conduct expedited discovery regarding the missing Art Collateral is also GRANTED. JP Morgan's request for an order directing Defendants or anyone in control of the missing Art Collateral to deliver the property to JP Morgan is DENIED.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

#### 1. *Confirmation of an Order of Attachment*

"At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed.R.Civ.P. 64. New York state law therefore governs this Court's evaluation of pre-judgment orders of attachment and seizure. *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 218–19 (2d Cir.2006); *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, No. 06 Civ. 52, 2006 WL 2337186, at *3 (S.D.N.Y. Aug. 11, 2006).

Section 6201 of the New York Civil Practice Law and Rules ("CPLR") states, "An order of attachment may be granted in any action ... where the plaintiff has demanded and would be entitled ... to a money judgment against one or more defendants, when ... the defendant is a non-domiciliary residing without the state, or is a foreign corporation not qualified to do business in the state," or when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

On a motion for an order to confirm an order of attachment, the plaintiff is required to demonstrate "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a).

#### 2. *Confirmation of an Order of Seizure*

With respect to confirming an order of seizure,

[A]n order to seize chattels may issue upon the presentation of an affidavit and undertaking and upon a finding that it is probable that plaintiff will succeed on the merits and that the facts are as stated in the affidavit. In the affidavit, the plaintiff must demonstrate, among other things, that it "is entitled to possession by virtue of the facts set forth"

---

1. Defendants contend that JP Morgan's reply brief raised new arguments that were not included in JP Morgan's initial moving papers, and Defendants therefore request permission to file a sur-reply. (*See* Letter to the Court from Edmund M. O'Toole, dated May 12, 2009.) The Court has made its decision based on the arguments and facts contained in the initial moving papers, the opposition papers, and the attached declarations and affidavits. Because the Court has not based its decision on JP Morgan's reply papers, no sur-reply is necessary.

and that "the chattel is wrongfully held by the defendant named."

*Nanjing Textiles*, 2006 WL 2337186, at *3 (*quoting* CPLR § 7102(c)). A plaintiff who has obtained an ex parte order of seizure must move to confirm that order, and "[u]pon the motion to confirm, the plaintiff shall have the burden of establishing the grounds for confirmation." CPLR § 7102(d).

### 3. *Request for Expedited Discovery*

Because this action was originally filed in the State Court, JP Morgan sought leave to conduct examinations to determine the location of the missing Art Collateral pursuant to Articles 23 and 31 of the CPLR. The Court will apply the Federal Rules of Civil Procedure when considering JP Morgan's request for expedited discovery.

### 4. *Request for Order Directing Delivery of Chattel*

JP Morgan also sought an order directing Defendants or any other person in custody or control of the missing Art Collateral to turn over that collateral pursuant to CPLR § 7109(b), which provides that "[w]here a chattel is unique, the court, in addition to granting a judgment under section 7108, may direct that a party in possession deliver the chattel to the party entitled to possession."

## B. *APPLICATION*

The parties dispute most of the facts involved in this matter, including whether the Promissory Note's maturity date, which was originally December 27, 2008, has been extended by one year. Defendants contend that they were in the process of negotiating the terms of that extension, including revisions to the collateral requirements necessitated by the absence of at least three pieces of art in the Art Collateral from the apartment where they were supposed to be kept under the terms of the Promissory Note. Defendants maintain that JP Morgan was informed that these three works were no longer in the apartment as of December 2008, and that the parties were heavily involved in negotiating new collateral terms for an extension of the Promissory Note before it came due on December 27, 2008, and for several months afterwards as well. The revised set of art works comprising the new Art Collateral is allegedly reflected by a term sheet signed by Louis Reijtenbagh on December 2, 2008 (the "Term Sheet"). Defendants point out that Louis Reijtenbagh has paid $27 million into an account at JP Morgan in accordance with the new collateral terms, and that Defendants are not in default of the Promissory Note because it has been extended. Even if the Court were to find that the Promissory Note was not officially extended because the paperwork was not formally executed, Defendants argue that they would prevail in this action under the doctrines of partial performance and equitable estoppel.

At this time the Court makes no determination of whether the Promissory Note has been extended because even assuming that it has been extended, the Court is persuaded that JP Morgan has succeeded in establishing the grounds for the attachment and seizure, and that it is likely to succeed on the merits of its cause of action. In the following analysis, the Court assumes, but does not decide, that the Art Collateral put up in connection with the extended Promissory Note—if the Promissory Note was in fact extended—is reflected in the Term Sheet offered by the Defendants, because even accepting this assumption as true the Court would find in favor of JP Morgan.

### 1. *Order of Attachment*

■ A statutory ground for attachment exists here because JP Morgan has dem-

onstrated in accordance with § 6201 that Defendants have assigned or encumbered property that is the subject of the underlying dispute. Monte Carlo, whose sole owner and controlling shareholder is Louis Reijtenbagh, pledged four pieces from the Art Collateral for the original Promissory Note to another creditor, ABN AMRO Bank (Luxembourg) S.A. ("ABN") in 2007, in connection with a Q50 million loan. (*See* Affidavit of Luisa V. O'Hanlon in Support of JP Morgan's Motion by Order to Show Cause for Confirmation of Ex Parte Order of Seizure and Ex Parte Order of Attachment, dated April 9, 2009 ("O'Hanlon Apr. 9 Aff.") ¶ 8(j)).) At least two of the pieces in question, Dubuffet's *Trinité Champs Elysées* and Van Dongen's *Venise, Seuil des Eaux,* are a part of the allegedly renegotiated collateral. (*See* Declaration of Louis J.K.J. Reijtenbagh, dated April 22, 2009, Ex. C.) Louis Reijtenbagh has represented to the Court that he was not aware that these two works were also apparently pledged to ABN, but he does not deny this allegation. (*See id.* ¶ 53.)

■ JP Morgan has also established a likelihood of success on the merits. The Defendants' pledge of pieces from the purportedly revised list of Art Collateral to another creditor, as described above, shows that JP Morgan is likely to succeed on its breach of contract claim. The removal of Van Dongen's *Jeune Arabe* from the apartment also supports a finding that JP Morgan is likely to succeed on the merits, as that painting constituted collateral for the original Promissory Note and was to be collateral to the purported extension of the Promissory Note. The removal of the painting is a default that entitles JP Morgan to take possession of all of the Art Collateral. (*See* O'Hanlon Apr. 9 Aff. ¶¶ 13–14.)

■ Finally, JP Morgan has established that the remedy of attachment is needed to secure payment of a potential judgment

in this matter. The complaint alleges that Defendants have defaulted on $23 million of a $50 million Promissory Note, and JP Morgan has submitted affidavits attesting that Defendants have removed pieces of the Art Collateral—in the original or purportedly revised form—from the apartment where they were required to be stored, and have encumbered or assigned pieces of that collateral to other creditors. Under these circumstances, the Court finds that the attachment originally authorized by the State Court was warranted, and therefore grants the motion to confirm the attachment.

### 2. *Order of Seizure*

■ JP Morgan has also established the grounds for confirmation of the order of seizure. The affidavit provided by JP Morgan in support of the order of seizure cites the security agreement ("Security Agreement") entered into between Monte Carlo and JP Morgan, in support of the Promissory Note entered into by Louis Reijtenbagh. (*See* Affidavit of Luisa V. O'Hanlon in Support of JP Morgan's Motion for an Ex Parte Order of Attachment and Ex Parte Order of Seizure, dated April 3, 2009, ¶ 8(b)).) Section 12(iv) of the Security Agreement authorizes JP Morgan to take possession of the Art Collateral in the event of a default. (*See* Affidavit of Luisa V. O'Hanlon in Support of JP Morgan's Motion by Order to Show Cause for (A) an Order of Seizure, (B) a Temporary Restraining Order, and (C) a Preliminary Injunction, dated April 1, 2009, Ex. B, 15.) As discussed above, JP Morgan has established that it is likely to succeed in its claim that Defendants are in default of the Promissory Note, in its original or allegedly extended form, and the Court therefore confirms the order of seizure.

### 3. *Expedited Discovery*

■ JP Morgan seeks expedited discovery so that it may determine the location

of any missing Art Collateral. The Court will grant leave to conduct expedited discovery on this issue. The parties are directed to develop an agreed-upon schedule for expedited discovery within ten days of this Order. If the parties cannot reach agreement in this regard, they shall address any dispute to Magistrate Judge Theodore H. Katz, to whom the matter will be referred for resolution of any such issue as part of his oversight of general pretrial matters.

### 4. *Order Pursuant to CPLR § 7109(b)*

██ JP Morgan also seeks an order pursuant to CPLR § 7109(b), directing Defendants or any other person in custody or control of the missing Art Collateral to turn that collateral over to JP Morgan. An order pursuant to CPLR § 7109(b) is generally appropriate when the court has already made a determination as to "the party entitled to possession." CPLR § 7109(b); *see Christie's Inc. v. Davis*, 247 F.Supp.2d 414, 424 (S.D.N.Y.2002) (issuing order pursuant to CPLR § 7109(b) after granting plaintiff summary judgment on replevin claim). The Court declines to issue such an order until it has issued a final ruling on the merits of the parties' dispute.

### III. *ORDER*

For the reasons stated above it is hereby

**ORDERED** that the motion by plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan") for an order confirming the ex parte order of seizure and ex parte order of attachment granted by the New York State Supreme Court, Bronx County, in this action is GRANTED; and it is further

**ORDERED** that the parties are given leave to conduct expedited discovery regarding the location of artwork that is alleged to serve as collateral for the promissory note at issue in this litigation. The parties shall inform the Court of the agreed-upon schedule for expedited discovery on this issue within ten days of the date of this Order. Any disputes in this regard are to be addressed to Magistrate Judge Theodore H. Katz; and it is further

**ORDERED** that JP Morgan's request for an order pursuant to New York Civil Practice Law and Rules § 7109(b) is DENIED.

**SO ORDERED.**