**ST. LOUIS GROUP, INC., Plaintiff,**

v.

**METALS AND ADDITIVES CORP., INC., et al., Defendants.**

**Civil Action No. L–11–22.**

United States District Court,
S.D. Texas,
Laredo Division.

April 26, 2011.

---

Baldemar Garcia, Jr., Person Whitworth et al, Laredo, TX, Edward Andrew Cavazos, Conor Monroe Civins, Bracewell and Giuliani LLP, Austin, TX, for Plaintiff.

David S. Klinestiver, Gary P. Price, Matthew S. Tarkington, Lewis & Kappes PC,

Indianapolis, IN, John A. Kazen, Kazen Meurer et al, Laredo, TX, for Defendant.

## MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is Defendants' "Motion for Leave to Conduct Expedited Depositions" (Dkt. No. 7) filed on April 8, 2011. In their Motion, Defendants ask the Court to issue an order authorizing the expedited depositions of Plaintiff–Counterclaim Defendant, St. Louis Group, Inc. and its owner/operator, Javier Rodriguez, pursuant to Federal Rule of Civil Procedure 26(d)(1). (*See* Dkt. No. 7). For the reasons set forth below, Defendants' Motion (Dkt. No. 7) is DENIED.

## I. BACKGROUND

Plaintiff St. Louis Group, Inc. ("Plaintiff") filed this action for a declaration of rights under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.* Plaintiff is in the business of selling chemical additives to be used in the fabrication of fire retardant and smoke suppressant materials, and is owned and operated by Javier Rodriguez.[1] (*See* Dkt. No. 1 at ¶ 9). In March 2010, Plaintiff filed an application with the United States Patent and Trademark Office to register the mark "CharFlam" to be used to identify "[f]ire retardant and smoke suppressant chemicals." (*See id.*, Ex. A). In April 2010, Plaintiff agreed to license "CharFlam" to St. Louis Group, LLC ("SLG–LLC"), an Indiana-based company that is in the business of selling chemical additives to be used in the fabrication of fire retardant and smoke suppressant materials. (*See* Dkt. No. 1 at ¶ 11). Dagoberto Hornedo[2] is the president of SLG–LLC and manages all of its sales and operations. (*See id.*).

Prior to working for SLG–LLC, Mr. Hornedo was employed by PAG Holdings, Inc. ("PAG") and was an officer of PAG and Metals and Additives Corporation, Inc. ("MAC"). (*See* Dkt. No. 1 at ¶ 12; Dkt. No. 6 at ¶ 12). MAC and PAG are in the busi-

ness of manufacturing and selling various chemicals and chemical compounds for flame retardant and smoke suppressant applications. (*See* Dkt. No. 6 at pg. 7). In April 2010, Mr. Hornedo ended his employment with MAC and PAG, and accepted his current position as president of SLG–LLC. (*See* Dkt. No. 1 at ¶ 13). Shortly thereafter, in May 2010, MAC and PAG filed a lawsuit in Indiana state court. In that lawsuit, MAC and PAG allege that, during his employment, Mr. Hornedo breached his fiduciary duty by making preparations to create and join SLG–LLC and that he misappropriated trade secrets. (*See* Dkt. No. 1 at ¶ 13 and Ex. B; Dkt. No. 6 at ¶ 13).

During the July 2010 deposition of Mr. Hornedo in the Indiana lawsuit, counsel for MAC and PAG questioned Mr. Hornedo about SLG–LLC's use of "CharFlam." (*See* Dkt. No. 1 at ¶ 14; Dkt. No. 7, Ex. B). Approximately three weeks later, counsel for MAC and PAG sent Plaintiff a "cease and desist" letter (1) alleging that "CharFlam" infringes Defendants' alleged trademark rights in the marks CHARMAX, BROFLAM, and FOSFLAM and (2) demanding that Plaintiff discontinue its use of "CharFlam" in connection with fire retardants and smoke suppressant chemicals. (*See* Dkt. No. 1, Ex. C).

In October 2010, MAC and PAG filed a motion to join Plaintiff as a defendant in the Indiana lawsuit so that it could bring federal trademark infringement claims against both Plaintiff and SLG–LLC based on the use of the "CharFlam" mark. (*See* Dkt. No. 1 at ¶ 15; Dkt. No. 6 at ¶ 15). The Indiana state court scheduled a hearing on the joinder motion for March 9, 2010. (*See* Dkt. No. 7 at ¶ 3 n.1). Before the Indiana state court could rule on the issue of joinder, on March 7, 2010, Plaintiff filed the instant action seeking a declaration from this Court that its "CharFlam" mark does not infringe or otherwise violate Defendants' rights. (*See* Dkt. No. 1). On March 17, 2011, the Indiana state court denied MAC and PAG's motion to join Plaintiff in the Indiana lawsuit on the basis

1. Javier Rodriguez is not a party to this action.

2. Dagoberto Hornedo is not a party to this action.

that jurisdiction is proper in federal court for the trademark claims MAC and PAG seek to file against Plaintiff. (*See* Dkt. No. 7, Ex. A at ¶ 3). On April 8, 2011, Defendants filed their "Motion for Leave to Conduct Expedited Depositions," asking this Court to issue an order authorizing expedited depositions. (*See* Dkt. No. 7).

## II. DISCUSSION

■ Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(iii), "[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the party seeks to take the deposition before the time specified in Rule 26(d). . . ." Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Although the Federal Rules do not provide a standard for the court to use in exercising its authority to order expedited discovery, it is generally accepted that courts use one of the following two standards to determine whether a party is entitled to conduct such discovery: (1) the preliminary-injunction-style analysis set out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y.1982); or (2) the "good cause" standard.[3] *See Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386 (E.D.Wis. 2009); *see also* MOORE'S FEDERAL PRACTICE § 26.121.

■ Between the two approaches, the *Notaro* preliminary injunction-style analysis, which appears to have become the minority approach, is the more rigid standard. Under that standard, a court analyzes the following factors: "(1) irreparable injury; (2) some probability of success on the merits; (3)

some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party will suffer if the expedited relief is granted." *See, e.g., Edgenet*, 259 F.R.D. at 386 (citing *Notaro*, 95 F.R.D. at 405); *see also Cecere v. County of Nassau*, 258 F.Supp.2d 184, 186 (E.D.N.Y. 2003).

■ An increasing majority of district courts have instead adopted a "good cause" standard to determine whether to authorize expedited discovery. *See, e.g., Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D.Ill.2000); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D.Cal.2002); *Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 327 (S.D.N.Y.2005); *Dimension Data*, 226 F.R.D. at 530–532. In a "good cause" analysis, a court must examine the discovery request "on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 327 (quoting *Merrill Lynch*, 194 F.R.D. at 624) (emphasis in original). Good cause may be found "where the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *See Energy Prod. Corp. v. Northfield Ins. Co.*, 2010 WL 3184232, at * 3 (E.D.La. Aug. 6, 2010) (quoting *Semitool*, 208 F.R.D. at 276) (internal quotations omitted). In essence, a "good cause" analysis is akin to a broader and more flexible totality of the circumstances analysis.[4] *See Dimension Data*, 226 F.R.D. at 531 ("a standard based upon reasonableness or

---

3. Some courts use the "good cause" standard and a "reasonableness" standard interchangeably. *See Am. LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 n. 4 (C.D.Cal.2009) (citing cases); *see also Dimension Data N. Am., Inc. v. Netstar–1, Inc.*, 226 F.R.D. 528, 531–532 (E.D.N.C.2005); *see also* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.121 (2011).

4. Courts commonly consider the following factors in determining whether "good cause" exists to order expedited discovery: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4)

the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *See, e.g., Sunflower Elec. Power Corp. v. Sebelius*, 2009 WL 774340, at *2 (D.Kan. Mar. 20, 2009) (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 143 (D.D.C.2005)) (internal quotations omitted). Thus, although a preliminary-injunction-style analysis will not be appropriate in all cases, the "good cause" analysis is flexible enough to allow courts to use their discretion in applying the preliminary-injunction factors, or other applicable factors, in cases where those factors may be suitable.

good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules").

■ The Fifth Circuit has not adopted either standard. Several district courts within the Fifth Circuit have expressly utilized the "good cause" standard when addressing this issue. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F.Supp.2d 986, 991 (S.D.Tex.2004); *Energy Prod. Corp.,* 2010 WL 3184232, at *3; *Paul v. Aviva Life and Annuity Co.,* 2009 WL 3815949, at *1 (N.D.Tex. Nov. 12, 2009); *Rodale, Inc. v. U.S. Preventive Med., Inc.,* 2008 WL 4682043, at *1 (E.D.Tex. Oct. 21, 2008); *U.S. Commodity Futures Trading Comm'n v. M25 Inv., Inc.,* 2009 WL 3740627, at *1 (N.D.Tex. Sept. 29, 2009); *Philip Morris USA, Inc. v. Tin's, Inc.,* 2003 WL 22331256, at *1 (M.D.La. Apr. 23, 2003). Moreover, the Court notes that other courts have criticized a preliminary-injunction-type analysis. *See, e.g., Merrill Lynch,* 194 F.R.D. at 624 (opining that a preliminary-injunction-type analysis to determine entitlement to expedited discovery did not make sense when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing); *Ayyash,* 233 F.R.D. at 326 (stating "it seems that the intention of the [Federal Rules] was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent [preliminary-injunction-type] test"); *Semitool,* 208 F.R.D. at 275 (rejecting the preliminary-injunction-type analysis as "rigid" and questioning the viability of such an analysis when the leading case, *Notaro,* was decided before the 1993 amendment to Rule 26 and other interests were at stake under the previous language); *OMG Fidelity, Inc. v. Sirius Tech., Inc.,* 239 F.R.D. 300, 303–04 (N.D.N.Y.2006) (stating that although *Notaro* was a "succinct, well-reasoned decision," it addressed a "very specific situation," the underpinnings of which did not apply in the case at hand). Without any binding authority to the contrary, and in light of the fact that a majority of courts

have adopted the "good cause" standard, this Court believes that a showing of good cause should be made to justify an order authorizing discovery prior to the Rule 26(f) conference. *See* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2046.1 (3d ed. 2010) ("Although the rule does not say so, it is implicit that some showing of good cause should be made to justify such an order . . . .").

■ The burden of showing good cause is on the party seeking the expedited discovery. *See Qwest Commc'ns Int'l, Inc. v. World-Quest Networks, Inc.,* 213 F.R.D. 418, 419 (D.Colo.2003). Moreover, the subject matter related to requests for expedited discovery should be narrowly tailored in scope. *See Semitool,* 208 F.R.D. at 277 (discovery requests held to be narrowly tailored where Defendants' representative is not subjected to a free-ranging deposition); *Dimension Data,* 226 F.R.D. at 532 (E.D.N.C.2005) (considering that the discovery request was not narrowly tailored in denying plaintiffs' motion for expedited discovery); *see also Monsanto Co. v. Woods,* 250 F.R.D. 411, 413 (E.D.Mo.2008) (citing *Irish Lesbian & Gay Org. v. Giuliani,* 918 F.Supp. 728, 730–31 (S.D.N.Y.1996)) ("[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad.").

■ Irrespective of the standard applied, "[e]xpedited discovery is not the norm." *Merrill Lynch,* 194 F.R.D. at 623. District courts, however, have allowed expedited discovery under a variety of circumstances.[5] For example, courts have granted expedited discovery requests when there is some showing of irreparable harm that can be addressed by limited, expedited discovery. *See, e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh,* 615 F.Supp.2d 278, 282–83 (S.D.N.Y.2009) (granting expedited discovery to plaintiffs to determine the location of missing art pledged as collateral for $50 million

---

5. When Rule 26(d) was revised in 1993, the advisory committee's note provided some guidance and suggested that "[early discovery] will be appropriate in some cases, such as those involving requests for preliminary injunction or motions challenging personal jurisdiction." FED. R.CIV.P. 26(d) advisory committee's note.

promissory note); *Monsanto,* 250 F.R.D. at 413 (allowing limited discovery to minimize the risk of loss or destruction of the physical evidence of infringement); *Stern v. Cosby,* 246 F.R.D. 453, 457–57 (S.D.N.Y.2007) (allowing expedited discovery to determine whether defendant was interfering with fact witnesses and attempting to obstruct justice in that case); *Ayyash,* 233 F.R.D. at 326–27 (allowing expedited discovery on third-parties to locate assets in the United States relating to foreign defendants who had the incentive to hide those assets); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.,* 204 F.R.D. 675, 676 (D.Colo.2002) (allowing limited discovery in infringement action where bean plant variety at issue is a commodity subject to sale and consumption and might not be available for inspection at a later date); *McMann v. Doe,* 460 F.Supp.2d 259, 265–66 (D.Mass.2006) (allowing expedited discovery on basis that showing of irreparable harm had been made because plaintiff could receive no remedy without knowing defendant John Doe's true name).

In addition, some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket. *See e.g., Sheridan v. Oak St. Mortgage, LLC,* 244 F.R.D. 520, 522 (E.D.Wis.2007) (noting that absent limited discovery to obtain information relative to class certification and damages, plaintiff would be unable to pursue his claims in that case); *Arista Records LLC v. Does 1–19,* 551 F.Supp.2d 1, 6–7 (D.D.C.2008) (finding that the case could not proceed without expedited discovery to determine the identity of 19 John Doe defendants); *Semitool,* 208 F.R.D. at 277 (allowing limited discovery in a patent infringement case where it would "substantially contribute to moving the case forward and facilitating compliance with the Patent Local Rules").

■ While the Court recognizes that other courts have routinely granted expedited discovery requests in infringement and unfair competition cases, good cause still must be demonstrated. *See, e.g., Pod–Ners,* 204 F.R.D. at 676 (citing *Revlon Consumer Prod. Corp. v. Jennifer Leather Broadway, Inc.,* 858 F.Supp. 1268, 1269 (S.D.N.Y.1994)).

Here, Defendants simply have not met their burden in establishing "good cause." First, Defendants argue that there is a discrepancy between Plaintiff's complaint (in paragraph 18) stating "that MAC's claims are impeding its use of the 'CharFlam' name" and Mr. Hornedo's previous deposition testimony that "he and Mr. Rodriguez always intended the 'CharFlam' name to be transferred or assigned to SLG Indiana." (*See* Dkt. No. 7 at ¶ 7). Assuming *arguendo* that there is a discrepancy, it is not clear to the Court how this alleged discrepancy would cause a harm that would necessitate expedited discovery. Further, Defendants seek to depose Plaintiff's representative and Mr. Rodriguez. (*See* Dkt. No. 7 at pg. 1). However, the Court is hesitant to grant such a request because it is unclear if Defendants are seeking free-ranging depositions of these witnesses or whether they are simply seeking to depose the witnesses about the above-referenced discrepancy.

Second, Defendants argue that the testimony they are seeking is essential "to determine whether the present action [is] based upon meritorious grounds, or whether it was filed simply to thwart the Indiana litigation." (*See* Dkt. No. 7 at ¶ 7). It appears that Defendants are questioning Plaintiff's motives by suggesting that it filed the instant action without having a genuine interest in protecting its "CharFlam" mark. However, *Defendants* initiated Plaintiff's involvement in this matter by sending Plaintiff a "cease and desist" letter asking Plaintiff to, among other things, "immediately and forever cease and desist from all uses of **CharFlam**," a mark that Plaintiff arguably may have a right to use. (*See* Dkt. No. 1, Ex. C at pg. 3). Further, *Defendants* then sought to add Plaintiff as a party to the Indiana state court action and to assert claims against Plaintiff for trademark infringement. (*See* Dkt. No. 7 at ¶ 3 n.1). Before the Indiana state court could rule on the proposed joinder, Plaintiff filed the instant action asking the Court for a declaration "that its trademark, 'CharFlam,' does not infringe, unfairly compete with, or otherwise violate the rights of Defendants." (*See* Dkt. No. 1 at ¶ 1). Thus, given Defendants' actions in initiating the events that led to this properly-filed lawsuit, the Court can-

not discount the possibility that a genuine dispute exists.

Third, Defendants state they "should not be forced into protracted litigation in a foreign jurisdiction, if, in fact, Plaintiff's claims are baseless." (*Id.*). While the case may have been filed in a "foreign" jurisdiction for MAC and PAG, as long as the lawsuit is initiated in a proper forum (*i.e.*, there is subject-matter jurisdiction, personal jurisdiction, and proper venue), being forced to litigate this matter in Laredo, Texas, as opposed to the state of Indiana, is not the type of harm that can establish good cause to warrant expedited discovery.

Fourth, Defendants argue that "expedited depositions are warranted as they will assist this Court in the speedy resolution of this matter." (*See* Dkt. No. 7 at ¶ 8). More specifically, they argue that earlier depositions will result in earlier summary judgment motions on the declaratory claims. (*See id.*). While depositions "sooner than later" may help in a "speedy" resolution, that reason alone does not constitute good cause. If it did, then expedited discovery would be the norm instead of the exception, and there would be no substantive purpose for Federal Rule 26(d)(1). As such, Defendants have not presented the Court with a compelling reason to deviate from the normal course of discovery by ordering one-sided discovery to begin just prior to the commencement of formal discovery. *See Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd.*, 2011 WL 673926, at *3 (D.Mass. Feb. 18, 2011).

Finally, the Court notes that the parties can move forward with discovery after they have participated in the 26(f) conference, which functions as the terminator of the moratorium on discovery. *See* FED.R.CIV.P. 26(d)(1). As per the Court's Order for Conference, the parties must hold their 26(f) conference on or before May 2, 2011, which would render the request for expedited depositions moot. (*See* Dkt. No. 11 at pg. 1).

## III. CONCLUSION

Defendants have not established that good cause exists for this Court to authorize expedited discovery. Thus, Defendants' "Motion for Leave to Conduct Expedited Depositions" (Dkt. No. 7) is DENIED.

IT IS SO ORDERED.