QWEST COMMUNICATIONS
INTERNATIONAL, INC.,
Plaintiff,

v.

WORLDQUEST NETWORKS,
INC., Defendant.

No. CIV.A.02–WM–2195 (CBS).

United States District Court,
D. Colorado.

Jan. 2, 2003.

Ian L. Saffer, Esq., Townsend and Townsend and Crew, Denver, CO, for plaintiff.

## ORDER ON QWEST COMMUNICATIONS INTERNATIONAL, INC.'S MOTION FOR LEAVE TO TAKE ACCELERATED DISCOVERY

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Plaintiff Qwest Communications International, Inc.'s ("Qwest") *ex parte* Motion for Leave to Take Accelerated Discovery, filed on December 24, 2002. Pursuant to an Order of Reference to Magistrate Judge, dated December 27, 2002, this action was referred to the Magistrate Judge to, *inter alia,* "convene a scheduling conference under Fed.R.Civ.P. 16(b) and enter a scheduling order ... [and] hear and determine pretrial matters, including discovery and other non-dispositive motions." The court has reviewed the pending motion, the pleadings, and the applicable law, and is sufficiently advised in the premises. For the following reasons, Plaintiff's motion for expedited discovery is denied.

Qwest's original complaint, filed on November 22, 2002, alleged that WorldQuest was infringing on a variety of trademarks and service marks owned by Qwest that are well-recognized by consumers of multimedia communications goods and services. Qwest contends that WorldQuest is using its infringing marks in "channels of trade that are

confusingly similar to the Qwest Goods and Services, including physical prepaid phone cards, internet services, wireless telecommunications services, and debit cards and related financial services." *See* Complaint at ¶ 34. The original complaint requested, *inter alia,* permanent injunctive relief barring WorldQuest from infringing on or using Qwest's marks or any confusingly similar marks in any way. The original complaint did not seek preliminary injunctive relief. As of December 24, 2002, the original complaint had not been served on Defendant WorldQuest.

On December 24, 2002, along with the pending motion for expedited discovery, Qwest filed an amended complaint. This pleading adds additional claims for unfair competition under Colorado statutory and common law. The amended complaint alleges that WorldQuest's first commercial use of the infringing marks in connection with physical prepaid phone cards, internet services, wireless telecommunications services, and debit cards and related financial services occurred in 2002. *See* Amended Complaint at ¶¶ 34–37. The amended complaint seeks preliminary and permanent injunctive relief. To date, Qwest has not served the original or amended complaint on Defendant WorldQuest.

Qwest's pending motion seeks "limited expedited discovery consisting of three categories of document requests and one 30(b)(6) deposition of WorldQuest limited to those same topics." The chief reason cited for the expedited discovery is Qwest's professed need to "determine whether it must file a motion for preliminary injunction to prevent irreparable harm that may stem from WorldQuest's recent plans to introduce its branded prepaid cash card products and related services into marketing channels where Qwest sells its phone cards and related services under its valuable QWEST family of marks." *See* Plaintiff's Motion for Leave to Take Accelerated Discovery at 4. Plaintiff claims that without this expedited discovery, Qwest would be irreparably harmed. *Id.*

■ Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f). The court may, in the exercise of its broad discretion, alter the timing, sequence and volume of discovery. *See, e.g.,* Fed.R.Civ.P. 26(b)(2) and 26(d). However, a party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures. *See Pod–Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co.,* 204 F.R.D. 675, 676 (D.Colo.2002); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.,* 202 F.R.D. 612, 614 (D.Ariz.2001). The good cause standard may be satisfied where a party seeks a preliminary injunction, *see, e.g., Ellsworth Associates, Inc. v. United States,* 917 F.Supp. 841, 844 (D.D.C.1996); *Revlon Consumer Products Corp. v. Jennifer Leather Broadway, Inc.,* 858 F.Supp. 1268, 1269 (S.D.N.Y.1994), or where the moving party has asserted claims of infringement and unfair competition. *See, e.g., Energetics Systems Corp. v. Advanced Cerametrics, Inc.,* 1996 WL 130991, *2 (E.D.Pa.1996). Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation. *See Pod–Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co.,* 204 F.R.D. at 676. However, in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery. *See* Fed.R.Civ.P. 26(b)(2). *See also Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 187 (1st Cir.1989) (noting the trial court's power to deal with the problem of over-discovery); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir.1985) (recognizing that district court judges are given broad discretion to supervise the discovery process, and their decisions are subject to review only for abuse of discretion).

■ Here, Qwest has failed to establish the requisite "good cause" for expedited discovery. Plaintiff states that it wishes to conduct expedited discovery to determine whether to seek preliminary injunctive relief in light of WorldQuest's "November of 2002" announcement of plans to introduce a prepaid calling card product and related ser-

vices. *See* Saffer Declaration attached to Plaintiff's Motion for Leave to Take Accelerated Discovery. The Saffer Declaration does not indicate whether the WorldQuest announcement provided specific information as to when this new cash card product would be introduced or the specific markets targeted for the new product. The court notes, however, that Qwest's original complaint filed on November 22, 2002 described WorldQuest's sale of prepaid phone cards that allegedly infringe on Plaintiff's marks. The original complaint did not seek preliminary injunctive relief. *See Gucci America, Inc. v. Daffy's, Inc.*, 2000 WL 1720738, *5 (D.N.J.2000)(denying request for expedited discovery where there was no pending motion for preliminary injunctive relief). *Compare Energetics Systems Corp. v. Advanced Cerametrics, Inc.*, 1996 WL 130991, *2 (permitting expedited discovery in connection with previously filed motion for preliminary injunction). Moreover, notwithstanding the urgency expressed in the pending motion, Qwest has yet to service Defendant with the original or amended complaint. On balance, Qwest has presented less-than-compelling reasons for departing from the orderly approach to discovery contemplated by Rule 26.

In applying the "good cause" standard under Rule 26(d), the court should consider the scope of the requested discovery. *See Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 WL 404820 (E.D.Pa.1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing); *In re Websecure, Inc. Securities Litigation*, 1997 WL 770414 (D.Mass.1997) (finding that expedited discovery was both "particularized" and "necessary to prevent undue prejudice"). Here, Qwest seeks on an expedited basis

> ... all documents concerning WorldQuest's first use of the WORLDQUEST mark in connection with prepaid cash card products and services, including, but not limited to, the "CashCard" product and related services.

> ... all documents concerning WorldQuest's current, past and intended use of the WORLDQUEST mark in connection with prepaid cash products and services, including, but not limited to, the "CashCard" product and related services. [and]

> ... all documents concerning WorldQuest's actual and intended advertising, marketing, and promotion of prepaid cash card products and services under the WORLDQUEST mark, including, but not limited to, the "CashCard" product and related services.

*See* Plaintiff's Motion for Leave to Take Accelerated Discovery at 2–3. In addition, Qwest requests an expedited Fed.R.Civ.P. 30(b)(6) deposition of a witness competent to testify regarding

> ... WorldQuest's first use of the WORLDQUEST mark in connection with prepaid cash card products and services, including, but not limited to, the "CashCard" product and related services.

> ... WorldQuest's current, past and intended use of the WORLDQUEST mark in connection with prepaid cash products and services, including, but not limited to, the "CashCard" product and related services. [and]

> ... WorldQuest's actual and intended advertising, marketing, and promotion of prepaid cash card products and services under the WORLDQUEST mark, including, but not limited to, the "CashCard" product and related services.

*Id.* at 3.

The relief requested in Qwest's motion belies the reference to "limited discovery." Assuming that "CashCard" refers to the product recently announced by WorldQuest, Qwest seeks information on *all* "prepaid cash card products, including, but not limited to, the 'CashCard' product and related services." *Compare Energetics Systems Corp. v. Advanced Cerametrics, Inc.*, 1996 WL 130991, *2 (expedited discovery limited to "discovery that relates to the narrow focus of the preliminary injunction hearing"). The court is hard pressed to define the outer boundary of Qwest's requests. *Cf. Western Resources, Inc. v. Union Pacific Railroad Co.*, 2001 WL 1718368, *3 (D.Kan.2001) (noting that the

"use of a broad term such as 'relate to' provides no basis upon which a party can reasonably determine what documents may or may not be responsive"). *See also Bradley v. Val–Mejias,* 2001 WL 1249339, *6 (D.Kan.2001) (a answer to discovery is not required when the request is overly broad and unduly burdensome on its face).[1]

Moreover, Plaintiff's document requests and Rule 30(b)(6) inquiries encompass events and products that clearly pre-date the current action. The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final determination on the merits. *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992). A preliminary injunction is proper where the moving party shows that:

> (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened harm to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1283 (10th Cir.1996). *See also Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir.2001); *Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1171 (10th Cir. 1998).

While there is no bright-line standard for what constitutes irreparable injury, "the essence of the concept requires a substantial threat of harm to the movant that cannot be compensated by money." *Harvey Barnett, Inc. v. Shidler,* 143 F.Supp.2d 1247, 1255 (D.Colo.2001). *See also Tri–State Generation & Transmission Assoc., Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989) (holding that a plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to as-

certain); *Bolivar v. Director of FBI,* 846 F.Supp. 163, 168 (D.P.R.1994) (holding that a loss of earning that can later be rectified is not an irreparable injury as required for injunctive relief). As the United States Supreme Court has recognized, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (internal quotation marks and citation omitted).

Moreover, preliminary injunctive relief cannot remedy harm that already has occurred. Thus, the moving party must come forward with evidence showing irreparable injury may occur *pendente lite* if the preliminary injunction is not granted. *Mountain Medical Equipment, Inc. v. Healthdyne, Inc.,* 582 F.Supp. 846, 848 (D.Colo.1984). Much of the expedited discovery that Qwest seeks addresses conduct that has already occurred, which would have little, if any, bearing on irreparable injuries that may occur *pendente lite.* The scope of the requested discovery is particularly troubling where, as in this case, the Defendant has yet to be served with the original or amended complaint. The court concludes that the broad discovery that Qwest seeks should be pursued more properly within the structure and supervision afforded by a court-approved scheduling order under Fed.R.Civ.P. 16(b).

Accordingly, for the foregoing reasons, Plaintiff Qwest Communications International, Inc.'s ("Qwest") *ex parte* Motion for Leave to Take Accelerated Discovery, filed on December 24, 2002, is denied without prejudice.

---

1. The breadth of these discovery requests has a significant bearing on the court's decision to deny the motion for expedited discovery. Whether these same requests would be unobjec-

tionable if propounded after a Rule 26(f) conference is a question the court need not address at this time.