**AMERICAN LEGALNET, INC.,
a California corporation**

v.

**Geoffrey Scott DAVIS, et al.**

**Case No. CV 09–7957–ODW(RCx).**

United States District Court,
C.D. California.

Nov. 25, 2009.

ble tolling doctrine exists on the present rec-       ord.

Lonnie Domonic Giamela, Andrew R. Hein, for Plaintiff.

Benjamin A. Nix, for Defendant.

**PROCEEDINGS: (1) ORDER DENYING PLAINTIFF'S MOTION FOR LIMITED EXPEDITED DISCOVERY; AND (2) ORDER DENYING PLAINTIFF'S MOTION TO PRESERVE EVIDENCE**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On November 5, 2009, plaintiff filed a motion for limited expedited discovery and to preserve evidence, without filing a notice of motion, and on November 9, 2009, this Court granted plaintiff's request to shorten time for the hearing on the motion and scheduled the hearing for November 25, 2009. On November 20, 2009, defendants filed their opposition to plaintiff's motion for expedited discovery and to preserve evidence and the opposing declarations of Scott Davis with exhibits, Patricia Fitzpatrick with exhibits, Yuri Frayman with exhibit and Amy Reverdy, and on November 23, 2009, plaintiff its reply and exhibit and the "supplemental" declaration of Erez Bustan. Oral argument was heard on November 25, 2009.

## BACKGROUND

### I

On October 30, 2009, plaintiff American LegalNet, Inc. ("ALN"), a California corporation, filed an unverified complaint[1] against defendants Geoffrey Scott Davis and CalendarRules.com LLC, a California limited liability company, setting forth claims for: (1) copyright infringement (17 U.S.C. § 501); (2) unfair competition (Cal. Bus. & Prof. C. § 17200); (3) conversion; (4) intentional interference with prospective economic advantage; (5) breach of contract; (6) breach of fiduciary duty; (7) misappropriation of trade secrets (Cal.Civ. C. § 3246); and (8) violation of Counterfeit Access Device and Computer Fraud & Abuse Act of 1984 (18 U.S.C. § 1030). ALN alleges it "is the premier provider of desktop to courthouse workflow software" and "offers the eDockets product, along with the Court Rules database...." Complaint ¶ 3. "These products automatically calendar events ... on electronic calendars ... and while doing so display a description of the relevant court rule(s)...." Complaint ¶¶ 8–9. In October 2007, ALN obtained a license from Open Text, Inc., to use and develop Open Text's court rules database and LegalKey docketing software and its related customer lists, and, pursuant to its new license, hired an Open Text employee, defendant Davis. Complaint ¶¶ 10–16, Exhs. A–B. Upon being hired, Davis signed a proprietary information agreement and nondisclosure

---

1. The declaration of Erez Bustan, plaintiff's President and Chief Executive Officer, which was filed in support of plaintiff's motion for preliminary injunction, sets forth many of the factual allegations of the complaint recited herein.

agreement with ALN. *Id.* ALN restricted access to the docketing software and database to a few employees, including Davis, who in September 2008 obtained permission to "test" ALN's products at home, and ALN provided a special computer to Davis for that purpose. Complaint ¶¶ 17–20. ALN alleges Davis then: without authorization copied ALN's electronic docketing software and copyrighted Court Rules database;[2] started his own competing company, known as CalendarRules.com LLC, which "offers a similar electronic docketing product to ALN and also offers a similar court rules database as ALN"; resigned from employment with ALN on October 20, 2008; and "has been soliciting ALN's customers and trying to poach ALN's employees." Complaint ¶¶ 7, 20–21, 33, 36, Exh. I. On December 2, 2008, ALN sent Davis a cease and desist letter. Complaint ¶¶ 22–23, Exh. D. However, in February 2009, ALN discovered Davis was communicating with one of its competitors. The Frayman Group, and in August 2009, ALN discovered CalendarRules.com's website. Complaint ¶¶ 25–27. ALN's customers have started defecting from ALN. *Id.*

Plaintiff seeks compensatory, statutory and punitive damages, Complaint ¶¶ 42–43, 55, 63, 67, 72–73, 85–86, 88, 96, restitution of defendants' unjust enrichment, Complaint ¶ 47, the return of confidential and proprietary information. Complaint ¶ 54, attorney's fees and costs, Complaint ¶ 87, and injunctive relief to prevent "[d]efendants and their agents, employees, attorneys, representatives and anyone acting at their direction or behalf from misappropriating, using, or disclosing, without ALN's express or implied consent, ALN's pro-

prietary information and trade secrets[,]" and enjoining Davis from continuing to breach his proprietary and nondisclosure agreements with plaintiff. Complaint ¶¶ 44, 48, 68, 89–90 & Prayer.

On October 30, 2009, plaintiff served defendants with the summons and complaint, and on November 19, 2009, defendants filed an answer to the complaint, raising numerous affirmative defenses, and separately filed counterclaims seeking damages and declaratory and injunctive relief for unfair business competition (Cal. Bus. & Prof. C. §§ 17200, et seq.) and intentional interference with prospective economic advantage.

## II

On November 3, 2009, plaintiff filed a motion for a preliminary injunction, with the supporting declarations of Erez Bustan, James Sheridan, Kin Lee and Chelise Anderson, and set the hearing on the motion for a preliminary injunction for December 7, 2009. On November 23, 2009, defendants filed their opposition to plaintiff's motion for a preliminary injunction and the opposing declarations of Davis, Fitzpatrick, Frayman, Reverdy and Erik Goltzer with exhibits.

By its motion for a preliminary injunction, ALN seeks an order requiring defendants to "return to ALN all trade secret and copyright protected information that Davis has acquired pursuant to his employment at ALN" and an order prohibiting defendants from:

> 1. ... copying, using, making, or selling ALN's copyright protected Court Rules database and proprietary electronic docketing software or any production that uses this information;

**2.** ALN hired a forensic expert, Encore Discovery Solutions, who examined the computer Davis used at ALN and "found that a remote USB device connected to an external hard drive [Western Digital brand] accessed Davis's hard drive" on September 11 and October 2, 2008 and copied ALN's Court Rules and docketing files. Complaint ¶¶ 28–29; *see also* Declaration of James Sheridan ("Sheridan Decl.") ¶¶ 2, 11–18.

2.   . . . using any information purloined or stolen from ALN during Davis's employment with ALN; [and]

3.   . . . using, disseminating, or selling ALN's proprietary marketing strategy relating to its electronic docketing software[.]

Proposed Order at 2.

## DISCUSSION

### III

■ "Rule 26(d) of the Federal Rules of Civil Procedure [3] generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f)." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.,* 213 F.R.D. 418, 419 (D.Colo.2003) (footnote added); *In re Countrywide Fin. Corp. Derivative Litiq.,* 542 F.Supp.2d 1160, 1179 (C.D.Cal.2008); *Ayyash v. Bank Al–Madina,* 233 F.R.D. 325, 326 (S.D.N.Y.2005). "However, courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause." *In re Countrywide Fin. Corp. Derivative Litig.,* 542 F.Supp.2d at 1179; *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 276 (N.D.Cal.2002); *see also Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419 (The "party seeking expedited discovery in advance of [the] Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures."); *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor,* 194 F.R.D. 618, 623 (N.D.Ill.2000) ("Expedited discovery is not the norm. Plaintiff must make some *prima facie* showing of the *need* for the expedited discovery."). "Good cause exists 'where the need for expedited discovery, in consideration of the administration of jus-

tice, outweighs the prejudice to the responding party.' " *In re Countrywide Fin. Corp. Derivative Litig.,* 542 F.Supp.2d at 1179 (quoting *Semitool, Inc.,* 208 F.R.D. at 276).

■ "The good cause standard may be satisfied where a party seeks a preliminary injunction." *Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419; *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F.Supp.2d 986, 991 (S.D.Tex.2004) ("Expedited discovery [is] appropriate in cases involving preliminary injunctions or challenges to personal jurisdiction."); Advisory Committee Notes to the 1993 amendments to Rule 26(d) (Discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction."). But expedited discovery is not automatically granted merely because a party seeks a preliminary injunction. *See,* e.g., *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,* 234 F.R.D. 4, 7 (D.D.C.2006) ("Surely, plaintiffs are not seeking expedited discovery to gain evidence to get the court to preserve the status quo. They want to gather all the evidence they would need to radically transform the status quo, on an expedited basis. But, that is not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff to have to secure it."); *Dimension Data N. Am. v. NetStar–1, Inc.,* 226 F.R.D. 528, 532 (E.D.N.C.2005) (denying request for expedited discovery in part because "the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination" and because "plaintiff has not

---

**3.** Rule 26(d) provides:
A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under

Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.
Fed.R.Civ.P. 26(d)(1).

made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26"). Rather, "where a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request ... on the entirety of the record to date and the reasonableness [4] of the request in light of all the surrounding circumstances...." *Merrill Lynch, Pierce, Fenner & Smith,* 194 F.R.D. at 624 (footnote added). "Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Disability Rights Council of Greater Wash.,* 234 F.R.D. at 6 (citations omitted); *Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419. Moreover, "in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery." *Qwest Commc'ns Int'l, Inc.,* 213 F.R.D. at 419; *Wachovia Sec., L.L.C.,* 571 F.Supp.2d at 1050.

Here, plaintiff seeks permission to conduct the following expedited discovery: (1) "the deposition of Defendant Geoffrey Scott Davis"; (2) for "its computer forensic expert, Encore Legal Solutions, ... to create a mirror image of Defendants' computers' hard drives and to analyze the hard drives drives"; (3) for "its computer forensic expert, Encore Legal Solutions, ... to create a mirror image of Defendants' external hard drives including, but not limited to a Western Digital external hard drive with internal serial number 7 & 382B41A3 & 0 & 57442D574341–553430303035373439 & 0"; [5] (4) to request "documents, including emails, relating to Defendant Davis's former employer and plaintiff, ALN, and ALN's customers"; (5) to request "documents, including emails, relating to Defendant Davis's or Calendar-Rules.com's work with or for Open Text, Inc. and/or The Frayman Group since January 1, 2008, through and including the present"; (6) to request "documents, including emails, relating to ALN's software and/or marketing strategies"; (7) "to propound interrogatories related to issues and facts covered under topics (4) through (6) above"; and (8) "to serve a third party subpoena under Fed.R.Civ.P. 45 on the hosting site for Defendants, GoDaddy.com, Inc." Proposed Order at 2:7–27 (footnote added). In its reply to defendants' opposition to its motion for expedited discovery, ALN, for the first time, sets forth the actual document requests [6] and interroga-

**4.** Courts have used the terms "good cause" and "reasonableness" interchangeably. *See,* e.g., *Wachovia Sec., L.L.C. v. Stanton,* 571 F.Supp.2d 1014, 1050 (N.D.Iowa 2008) ("[I]n general, the 'good cause' standard should be applied to requests for expedited discovery, balancing the need for expedited discovery, in the administration of justice, against the prejudice to the responding party, and considering the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances."); *Dimension Data N. Am.,* 226 F.R.D. at 531 ("[W]here plaintiff requests expedited discovery in prep-

aration for a preliminary injunction determination, ... a standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules of Civil Procedure.").

**5.** This is the Western Digital brand external hard drive referred to in footnote 2 above. Sheridan Decl. ¶ 14.

**6.** Specifically, ALN asks defendants to produce:

tories it proposes to serve on defendants.[7] *See* Reply, Exh. A.

Initially, the Court notes plaintiff has not limited its discovery requests to information "to preserve the status quo," as it must. *Disability Rights Council of Greater Wash.*, 234 F.R.D. at 7; *Dimension*

> 1. All documents, software, or firmware that refer or relate to ALN's CourtRules database, the LegalKey software or product as it relates to ALN's CourtRules database, or ALN's eDockets software or product as it relates to ALN's CourtRules database.
> 2. All documents that refer or relate to Open Text, Inc. ("OPT") or The Frayman Group ("TFG"); their commercial products; their products under development; intellectual property owned by, licensed, or assigned to OPT or TFG; or software owned by, licensed, or assigned to TFG or OPT.
> 3. All documents referring or relating to the advertising, promotion, sales, marketing, or announcement of any of Defendants' commercial products, including but not limited to press releases, tradeshow displays, price lists, pamphlets, brochures, catalogs, illustrations, and Internet displays.
> 4. All documents concerning the business plans of forecasts, sales plans or forecasts, marketing plans or forecasts, or strategic plans or forecasts involving any of Defendants' commercial products.
> 5. All documents identified or referred to in Defendants' Responses to ALN's First Set of Interrogatories to Defendants and any subsequent sets of Interrogatories.
> *Id.* at 22:25–23:14.

7. Specifically, ALN asks defendants to:
> 1. Identify and list (a) all customers or potential customers to whom Defendants have sold, attempted to sell, licensed, or attempted to license its products; (b) the person or people with whom Defendants discussed or negotiated such transactions; (c) the contact information for such person or people, including but not limited to name, company, phone and fax number, email, and webpage; and (d) identify all documents relating to, and all persons with knowledge of, such licensing or sales activities.
> 2. Identify all products licensed, commercially produced, marketed, distributed, offered for sale or sold by Defendants or any

*Data N. Am.*, 226 F.R.D. at 532; *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir.2009) ("The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem pending a determination of the action on the merits.'" (citation omitted)). To the contrary,

> licensee or agent of Defendants and, for each such product: (a) identify the earliest and latest dates when the product was licensed, commercially produced, marketed, distributed, offered for sale or sold; (b) identify the product's brand name, the product name, and model number; and (c) state the total sales in units and in dollars of the product; and (d) identify the person or people relating to the creation, development, marketing, or selling of such products.
> 3. Identify all products licensed, commercially produced, marketed, distributed, offered for sale or sold by OpenText, Inc. or the Frayman Group or any licensee or agent of those companies since October 20, 2008, that Defendants have helped create, develop, market, or sell, and, for such product: (a) identify the earliest and latest dates of Defendants' involvement, (b) identify when the product was licensed, commercially produced, marketed, distributed, offered for sale or sold; (c) identify the product's brand name, the product name, and model number; and (d) state the type and amount of compensation paid to Defendants; and (e) identify the person or people relating to the creation, development, marketing, or selling of such products.
> 4. Identify all consulting, advisory, or similar services that Defendants have performed, solicited, or negotiated since October 20, 2008, and, for each such service: (a) identify the start and finish dates when such services were performed, solicited, or negotiated; (b) state the type and amount of compensation paid to Defendants; (c) identify the person or people who performed the service, solicited the customer, or negotiated the services, including their name, company, address, phone number, and email address; and (d) and identify the customer of such services, including their name, company, address, phone number, and email address.
> *Id.* at 15:22–17:2.

plaintiff has made no effort to limit the topics on which it seeks to depose Davis to those topics pertinent to its motion for a preliminary injunction; in fact, plaintiff does not even identify the topics on which it seeks to examine Davis. *See* Motion at 7:5–6; *Disability Rights Council of Greater Wash.*, 234 F.R.D. at 7; *Dimension Data N. Am.*, 226 F.R.D. at 532; *see also Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419 ("In applying the 'good cause' standard under Rule 26(d), the court should consider the scope of the requested discovery.").

Similarly, plaintiff does not in any way limit Requests nos. 2 and 3, the requests to allow its forensic expert to examine and make mirror images of defendants' computers' internal and external hard drives; rather, the requests would allow plaintiff to obtain all information on defendants' internal and external hard drives. Significantly, plaintiff specifically does not limit the examination of defendants' hard drives to the "Western Digital external hard drive with internal serial number 7 & 382B41A3 & 0 & 57442D57434155343030303035373439 & 0[,]"—the one hard drive plaintiff suspects may have copied ALN's trade secrets. Bustan Decl. ¶ 23; Sheridan Decl. ¶ 14. Clearly, the discovery plaintiff seeks is not "narrowly tailored to obtain information relevant to a preliminary injunction determination" and instead goes to the merits of plaintiff's claims in this action. Thus, plaintiff has not established good cause for the broad discovery set forth in Requests nos. 1 through 3, pertaining to the deposition of Davis and the creation of mirror images of defendants' computers' internal and external hard drives. *Disability Rights Council of Greater Wash.*, 234 F.R.D. at 7; *Dimension Data N. Am.*, 226 F.R.D. at 532; *see also Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 WL 404820, *2–3 (E.D.Pa.1998) (denying motion for expedited discovery where movant's discovery requests were "wholly overbroad in scope" and with no "definitive limitations on the scope of sought-after discovery").

Requests nos. 4, 5 and 7 seek information relating to "ALN," "ALN's customers," and defendants' "work with or for Open Text, Inc. and/or The Frayman Group since January 1, 2008." These requests are problematic since ALN has shown no nexus between them and the preliminary injunctive relief it seeks. First, plaintiff's motion for a preliminary injunction pertains to defendants' alleged misappropriation and use of ALN's copyrighted database and proprietary software, and not any other aspect of defendants' business. Yet, ALN seeks extensive information about defendants' sales, products and customers, none of which go to ALN's motion for a preliminary injunction.

Second, ALN seeks extensive information about the business operations of Open Text, Inc., the company that initially licensed ALN to use its software, and The Frayman Group, a competitor of ALN— neither of whom are parties to this case— based solely on speculation that these companies may be assisting defendants in selling information allegedly misappropriated from ALN. On the other hand, defendants have provided evidence showing they, Open Text, Inc. and The Frayman Group are acting lawfully. The declarations of Scott Davis and Yuri Frayman establish that ALN obtained a non-exclusive license from Open Text, and in "November 2008 The Frayman Group, [sic] and Open Text entered in to [sic] an agreement where [The] Frayman Group became the sole partner for Open Text to support all LegalKey products," including the Court Rules database from October 2007. Declaration of Scott Davis ("Davis Decl.") ¶¶ 9–13; Declaration of Yuri Frayman ("Frayman Decl.") ¶¶ 1–5. In January 2009, The

Frayman Group "confirmed in writing that Mr. Davis had authorization, based on Open Text's permission to release the court rules data from October 20907 [sic], to use the court rules data." Frayman Decl. ¶ 6, Exh. A. Thereafter, "The Frayman Group granted, with the permission of Open Text, Mr. Davis the right to use the Court Rules Database obtained from Open Text, with certain restrictions." *Id.* ¶¶ 6, 10. This was the result of ALN's decision "not ... to provide [its customers] with the a [sic] Court Rules subscription beginning January 1, 2010 unless [the customer] agreed to switch products from LegalKey Critical Dates to a new product being launched by ALN known as 'eDockets.'" Declaration of Patricia Fitzpatrick ¶¶ 11, 15, 19, Exhs. B & D. Since switching to ALN's new product, eDockets, "was substantially more expensive" than maintaining updates to the LegalKey product, *id.* ¶ 13, Exh. C, at least one of ALN's customers contacted Open Text to determine whether "it could obtain support and update the LegalKey Court Rules product from Open Text or any other vendor." *Id.* ¶ 15. In response, Open Text advised the customer that it "had licensed the LegalKey Court Rules product to another vendor, The Frayman Group ... and the Frayman Group had a license agreement pursuant to which The Frayman Group had obtained the rights to continue to support the LegalKey product." *Id.* ¶ 16. The Frayman Group, in turn, put the customer in touch with defendant Davis, Frayman Decl. ¶¶ 7–9; Davis Decl. ¶¶ 20–24, 30–34, and the customer came to an agreement with defendants to "provide updates and support for [the customer] relating to the LegalKey product after ALN services ceased in 2009." *Id.* ¶¶ 17–18.

Third, defendant Davis unequivocally states in his declaration that he and his company are using software and data they lawfully obtained from Open Text and from publicly-available Court Rules to pro-vide support services for their Court Rules based calendaring system, Davis Decl. ¶¶ 35–48, Exh. E, and Davis reasonably explains that the similarities between ALN's Court Rules database and defendants' Calendarrules.com system stem from both being based on public court rules. *Id.* ¶¶ 35–42; *see also* Declaration of Amy Reverdy "Reverdy Decl." ¶¶ 6–7 (Since October 2009, I and others have been working on "build[ing] rules for new courts based on information which is publicly available on the various websites of the courts....."). Further, Davis explains his use of two computers while employed at ALN, *id.* ¶¶ 43–46, and swears he "do[es] not have any computer files belonging to ALN." *Id.* ¶ 47. This direct evidence is in stark contrast to the inference ALN asks the Court to draw from the declaration of its forensic expert, Mr. Sheridan, and the supplemental declaration of Mr. Bustan, that defendants could not possibly have developed their own software business in less than a year without having misappropriated ALN's copyrighted and proprietary information. The Court declines to draw these inferences, and finds ALN has not shown good cause for the Court to grant Requests nos. 4, 5 and 7.

Request no. 6 seeks permission to discover information relating to "ALN's software and/or marketing strategies." These requests, too, are problematic because they are "unrestrained as to time and scope and, therefore, seek[ ] wholly irrelevant matter" to ALN's motion for preliminary injunctive relief. *Merrill Lynch, Pierce, Fenner & Smith,* 194 F.R.D. at 621; *Dimension Data N. Am.,* 226 F.R.D. at 532. Moreover, although ALN seeks injunctive relief prohibiting defendants from "using, disseminating, or selling ALN's proprietary marketing strategy relating to its electronic docketing software[,]" ALN has provided absolutely no

evidence supporting its allegations that it developed a "marketing strategy" for its trade secrets and defendants illegally misappropriated ALN's "marketing strategies." *See* Complaint ¶¶ 75–91. Thus, plaintiff has not shown good cause for the Court to grant Requests nos. 6 and 7.

Request no. 8 seeks permission to serve a third party subpoena under Rule 45 "on the hosting site for Defendants, GoDaddy.com, Inc." However, since plaintiff has not provided any evidence that GoDaddy.com, Inc., is defendants' hosting site, this request must also be denied for lack of good cause. Even assuming arguendo GoDaddy.com is defendant CalendarRules.com's website's host, plaintiff has again failed to limit the scope of the Rule 45 subpoena it seeks to information pertinent to its motion for a preliminary injunction.

The Court has considered the declarations ALN filed supporting its motion for a preliminary injunction in determining whether to grant plaintiff's motion for expedited discovery and to preserve evidence. However, these declarations do not show ALN will be irreparably harmed by delaying the broad-based discovery it now requests until after the initial conference between the parties under Rule 26(f). *See Dimension Data N. Am.*, 226 F.R.D. at 532 (denying request for expedited discovery in part because "plaintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after initial conference between the parties pursuant to Rule 26 . . . ."). Although Ms. Anderson's declaration shows some of ALN's customers have decided to forego purchasing some services or software from ALN, *see* Anderson Decl. ¶¶ 5–7, there is no evidence, and no reasonable inference can be drawn, that these customers are instead purchasing from defendants software allegedly misappropriated from ALN. In fact, as Ms. Fitzpatrick explains, the cost of ALN's software may just be too steep for some of its customers. *See* Fitzpatrick Decl. ¶ 13, Exh. C ("The proposed charge for the upgrade [to ALN's new product] was substantially more expensive than what [the customer] had been paying LegalKey, Open Text, and ALN for updates to the LegalKey product.").

For all these reasons, plaintiff has not shown good cause for the Court to grant its motion for expedited discovery. Rather, "the broad discovery that [plaintiff] seeks should be pursued more properly within the structure and supervision afforded by a court-approved scheduling order under Fed. R. Civ. P. 16(b)." *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 421. Thus, plaintiff's motion for expedited discovery **IS DENIED.**[8]

## IV

Federal courts have the implied or inherent power to issue preservation orders as part of their general authority " 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Pueblo of Laguna v. United States*, 60 Fed.Cl. 133, 135–36 (2004) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

In determining whether to grant a request for a preservation order, the Court

---

**8.** In light of the Court's ruling, there is no need for the Court to address defendants' claim that California Code of Civil Procedure § 2019.210, which requires a party to identify the trade secret with reasonable particularity, "expressly prohibt[s]" discovery at this state of the proceeding. *See* Opp. at 6:24–10:3.

of Claims has adopted a streamlined two-prong standard that "requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome." [9] *Pueblo of Laguna*, 60 Fed.Cl. at 138. The Court of Claims has explained this standard, stating:

> To meet the first prong of this test, the proponent ordinarily must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place. More than that, the proponent must show that the particular steps to be adopted will be effective, but not overbroad—the court will neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility.

*Id.*

Some federal courts, however, have found the streamlined two-prong standard of the Court of Claims to be inadequate, and instead have adopted a "balancing test" which considers the following three factors:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form,

condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D.Pa.2004) (footnote omitted). [10] "The difference between these two tests lies in what the moving party must show with respect to the content of the evidence that is in danger of being destroyed. However, the distinction is more apparent than real." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y.2006).

Here, ALN seeks an order "to preserve all information relevant to the issues, facts, and circumstances raised in ALN's Complaint." Proposed Order at 3:12–13. More specifically, the proposed preservation order seeks to prevent defendants from "all purging, destruction, erasure, or recycling of information or storage media and to stop or disable all automatic functions, features, or procedures that purge, destroy, or erase information" "regardless of the form, format, equipment, or media in or on which the information is contained or stored." *Id.* at 3:13–18.

However, ALN has not met its burden under either the streamlined two-prong standard or the more detailed three-prong standard. First, ALN has presented absolutely no evidence that any relevant information has been lost or destroyed. Rather, ALN's request for a preservation order is based solely on the following statement in its motion:

> [T]he evidence sought consists mainly of electronic data, which may be lost through a computer's normal use. For example, information and data contained

---

**9.** This standard precludes consideration of "whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction." *Pueblo of Laguna,* 60 Fed.Cl. at 138 & n. 8.

**10.** This test also rejects consideration of the "proof of a probability of success in the litigation" factor, as well as the "public interest" factor, generally considered when determining injunctive relief. *Capricorn Power Co., Inc.,* 220 F.R.D. at 433 & n. 1.

on a computer's hard drive are automatically written over and replaced with new data.

Motion at 4:24–27. If ALN's statement of how electronic data is routinely "written over and replaced" were sufficient to establish there is a "significant risk" that information will be lost or destroyed, a preservation order would issue in each and every case in the federal courts. It is not. Although preservation orders may be fairly routine in complex litigation, *Treppel,* 233 F.R.D. at 369–70, this action is not a complex matter. "Since the plaintiff has not demonstrated that any documents have in fact been destroyed," the first prong of either test has not been met. *Id.* at 372.

Second, the preservation order ALN seeks applies "to all information" relevant to the Complaint. Yet, ALN has "provided no information with respect to the extent of the burden that would be imposed on [defendants] if [the requested] preservation order were entered" and "has therefore failed to demonstrate that the requested preservation order is 'not unduly burdensome.'" *Treppel,* 233 F.R.D. at 372. Thus, plaintiff's request for a preservation order is denied.

### ORDER

1. Plaintiff's motion for expedited discovery **IS DENIED.**

2. Plaintiff's request for a preservation order **IS DENIED.**