Hugh COLLINS, et al., Plaintiffs,

v.

INTERNATIONAL DAIRY QUEEN, et al., Defendants.

No. 5:94–CV–95–4 (WDO).

United States District Court, M.D. Georgia, Macon Division.

Nov. 1, 1999.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon, GA, Diane Green Smith, Lee Abrams, Lisa Ann Dunsky, Chicago, IL, for plaintiffs.

Emmet J. Bondurant, II, Atlanta, GA, Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, Quentin R. Wittrock, Minneapolis, MN, for defendants.

## ORDER

OWENS, District Judge.

Plaintiffs seek review and reversal of an order of the Discovery Special Master allowing defendants to take supplemental depositions of William Anton and Robert Pike, the current President and Treasurer of the Dairy Queen Operators' Association ("DQOA"). Defendants previously deposed Mr. Anton, a resident of Phoenix, Arizona, for six hours on February 28, 1997. Mr. Pike, a resident of Holland, Ohio, was deposed for approximately seven hours on July 10, 1996.

Defendants request supplemental depositions to discover additional facts and claims alleged in plaintiffs' Fifth Amended Complaint that were not alleged in the Fourth Amended Complaint. Defendants claim the additional discovery is necessary because Anton and Pike have relevant knowledge of additional facts and claims in the Fifth Amended Complaint based on their involvement in DQOA's efforts to obtain defendants' approval for alternative manufacturers and suppliers of products to the Dairy Queen system. Defendants consider the two men to be central witnesses because they were the only two Dairy Queen franchisees named on plaintiffs' witness list other than plaintiffs themselves.

Defendants claim that there are substantial areas of change in the Fifth Amended Complaint that would justify their reexamination of Anton and Pike. These include allegations that defendants violated the terms of their Uniform Franchise Offering Circulars, that defendants' supplier agreements were unreasonable, that defendants monitor franchisees' use of products, and that defendants accepted undisclosed payments on cups and lids. Defendants also seek to re-examine the witnesses concerning articles in DQOA's publication *The Bottom Line,* which appeared since the original depositions and which discuss allegations in the Fifth Amended Complaint as well as additional statements made about IDQ. In addition, defendants make reference to a videotape (the "Scrumpdillyishus Profits" videotape) in which Anton discusses topics related to allegations of below-cost pricing and defendants' relationship with warehous-es. They seek to depose the witnesses about products, including candy, sundae cups, and paper bags, that DQOA did not introduce until well after Anton's original deposition.

Plaintiffs deny that the amended complaint made any new substantive allegations in these areas. Further, they deny that either Anton or Pike have any special knowledge about any of the areas cited by defendants. They state that there are only three substantive changes between the Fourth Amendment and the Fifth Amendment to the complaint. These involve (1) additional claims that defendants have produced products at levels below their own costs in violation of Minnesota law, (2) additional claims relating to defendants' control over the IDQ-authorized warehouses that selling products to franchisees, and (3) a modification of the prayer for relief to allege that defendants' wrongful conduct is continuing. Plaintiffs argue that Anton and Pike could offer nothing of substance concerning these areas because they know nothing of the applicability or non-applicability of Minnesota law and could not provide anything additional for the factual record concerning the claim that defendants' conduct is continuing. Plaintiffs also contend that there is no showing that either Pike or Anton have special first-hand knowledge of defendants' relationship with the authorized warehouses. They point out that the primary allegations as to the distribution issue were set forth at pp. 11–12 of the Fourth Amendment, and that the only additional element in the Fifth Amendment concerned allegations that warranted application of the control exception to the rule in *Illinois Brick v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), an issue which the court has already decided adversely to plaintiffs. According to plaintiffs, the two witnesses have knowledge only about the warehouses from which they purchase, and they have already been questioned during their prior depositions as to the relationship between the warehouses and defendants and/or the DQOA/DQOC.

Further, plaintiffs dispute that Anton and Pike's status as the only two Dairy Queen franchisees currently named on plaintiffs'

witness list other than plaintiffs themselves is a sufficient reason to allow a second deposition. They note that defendants have identified ten franchisees as prospective trial witnesses whom they apparently intend to call to rebut testimony from plaintiffs' franchisee witnesses, and state that they intend to call additional franchisees as rebuttal witnesses to testify about their experiences in the Dairy Queen system rather than to rely only on Anton and Pike.

Federal Rule of Civil procedure 30(a)(2)(B) requires a party to obtain leave of court to take a deposition if the person to be examined has already been deposed in the case. Leave of court "shall be granted" to the extent it can be done consistent with Rule 26(b)(2). Rule 26(b)(2) requires the court to limit discovery if it is determined that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Plaintiffs' arguments against additional discovery fail to satisfy the factors enumerated in Rule 26(b)(2) which would require the court to overrule the Discovery Special Master's order. Most of the arguments simply dispute defendants' contentions as to the relevance of newly alleged provisions in the Fifth Amended Complaint and deny that additional information is likely to be had from Anton or Pike. Although plaintiffs assert that second depositions would be unreasonably cumulative, they have provided insufficient proof that this is the case and have not shown that a second deposition would be unduly burdensome or expensive. *See S.E.C. v. Long,* 130 F.R.D. 678, 679 (D.Kan.1990); *Christy v. Pennsylvania Turnpike Comm'n,* 160 F.R.D. 51, 53 (E.D.Pa.1995). Because of the time that has elapsed, the addition of new claims, and the evident knowledge of the witnesses in particular areas, re-examination of the two witnesses is likely to provide additional information not obtainable at the first depositions.

The Discovery Special Master made the following ruling:

> Having carefully considered the arguments of both sides, it is the opinion of the Discovery Special Master that there are reasonable grounds to allow defendants to take supplemental depositions of both Mr. Anton and Mr. Pike, given these men's involvement in DQOA activities including efforts to obtain defendants' approval of alternative products, the length of time and developments in this action since these men were initially deposed including additions to the allegations and claims in plaintiffs' Complaint, and the apparent significance of these two witnesses as the only non-plaintiff franchisees included on the plaintiffs' current witness list.

Additionally, the following limitations were placed on the depositions:

> The time length of each deposition will be limited to four (4) hours (not including any breaks during the course of the deposition). While it is to be expected that some questions from defendants' counsel in these supplemental depositions might touch on subject matters about which these witnesses were questioned in their initial depositions, these supplemental depositions should not involve substantial repetition of questions previously asked and answered and instead should focus on subjects not previously inquired about and facts or alleged facts and developments since their initial depositions.

The limitations imposed by the Special Master serve to alleviate any lingering concerns the court might otherwise have that the burdens of second depositions could outweigh their utility. Given the additional allegations in the Fifth Amended Complaint and the evident involvement of Anton and Pike in DQOA activities, it is reasonable that defendants be given the opportunity, as limited by the Special Master, to conduct additional discovery.

Plaintiffs have brought to the court's attention that on November 3, 1998, the Discovery Special Master required the parties to seek "prior approval from the discovery special master" before conducting discovery into documents or information created after November 30, 1997. Thus, to the extent that defendants seek information on Mr. Anton's contribution of articles to *The Bottom Line*, they may question the witnesses about only those articles created before that date unless they obtain such approval.

For the reasons stated above, plaintiffs' motion to reverse the Discovery Special Master's order of July 21, 1999, is hereby DENIED. Subject to all restrictions imposed by the Special Master in that order, and subject to any additional restrictions or directions imposed by the Special Master, defendants are granted permission to schedule second depositions of Anton and Pike.