Eddie **KLEPPINGER**, Jr., Plaintiff,

v.

**TEXAS DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

**Civil Action No. L–10–124.**

United States District Court,
S.D. Texas,
Laredo Division.

May 13, 2012.

Eddie Kleppinger, Jr., Laredo, TX, pro se.

Walter Clyde Brocato, Mary Sanchez, Matthew Tyler Bohuslav, Elsa Ulloa, Amy Michelle Kovar, Bonnie Cox Lockhart, Office of the Attorney General, Austin, TX, for Defendants.

### MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is "Defendants' Opposed Motion for Reconsideration of Order Denying Defendants' Motion for Leave to Take Oral Deposition of Plaintiff." (Dkt. No. 135). In the motion, Defendants Leo Garza, Marco Salgado, Naomi Flores, Yolanda Arriaga, and Brenda Harper (the "individual Defendants")[1], all in their individual capacities, request a "second deposition" of Plaintiff, consisting of an additional five hours, on a mutually agreeable date. (*Id.* at p. 7). On March 27, 2012, Plaintiff filed his response, seeking to avoid being redeposed. (Dkt. No. 140). More specifically, in Plaintiff's response, he moves for a protective order, asking the Court to deny the individual Defendants' motion, or in the alternative, delay this deposition until all of the Defendants have complied with their discovery obligations in this matter. (*Id.* at ¶¶ 3 and 18). Further, Plaintiff asks the Court to "quash" the latest notice by the individual Defendants to take his deposition. (*Id.* at ¶ 18). On April 12, 2012, the Court held a hearing on this matter. For the reasons stated below, Defendants' motion (Dkt. No. 135) is GRANTED. Further, Plaintiff's motion for a protective order (Dkt. No. 140) is GRANTED IN PART AND DENIED IN PART. Finally, Plaintiff's request to quash the deposition notice (Dkt. No. 140) is DENIED AS MOOT.

### I. BACKGROUND

The Court notes that, initially, Mr. Walter C. Brocato ("Mr. Brocato") and Ms. Mary Sanchez ("Ms. Sanchez") (from the Texas Attorney General's Office) appeared as the attorneys of record, representing all of the

---

1. When the individual Defendants filed their initial motion for leave to take Plaintiff's deposition, that motion included an additional defendant— Defendant Doris Howdeshell. (Dkt. No. 123, p. 1).

Defendants in this matter. (*See* Dkt. No. 33). The Court further notes that, on February 3, 2012, during a hearing involving a discovery dispute, Mr. Brocato first informed the Court of his agency's intention to bring in additional assistant attorney generals to represent the individual Defendants. (*See* Minute Entry, February 3, 2012). Instead of waiting for his colleagues to appear in this matter, Mr. Brocato forged ahead with a previously noticed deposition of Plaintiff on February 9, 2012. (*See* Dkt. No. 123, ¶ 7). That day, it appears that Mr. Brocato deposed Plaintiff for seven hours under the mindset that he was only representing or "asking questions on behalf of" the state agency—Texas Department of Transportation ("TXDOT"). (*Id.*).

On February 13, 2012, various attorneys began either filing notices of appearance or motions of *pro hac vice* to provide legal representation on behalf of the individual Defendants. (*See* Dkt. Nos. 101, 107, 108, 109, etc.). On March 6, 2012, the individual Defendants filed their first opposed motion for leave to take a second deposition of Plaintiff. (Dkt. No. 123). In that motion, the individual Defendants represented to the Court that they, in their individual capacities, "have not had an opportunity to depose" Plaintiff. On March 19, 2012, the undersigned denied that motion without prejudice, informing the individual Defendants that they would have to demonstrate "good cause" for Plaintiff's deposition to continue beyond seven hours imposed by Federal Rule of Civil Procedure 30(d)(1). (Dkt. No. 134).

## II. LEGAL STANDARD

■ Generally, a party may obtain a deposition simply by serving a notice or subpoena.

*Keck v. Union Bank of Switz.*, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997); Fed. R.Civ.P. 30(a)(1). At one time, this was also true even if a party was seeking to reopen or retake a deposition. However, in 1993, Federal Rule of Civil Procedure 30 was amended changing this prior practice.[2] Fed.R.Civ.P. 30 advisory committee's notes, 1993 Amendments. Rule 30 now requires that "[a] party must obtain leave of the court, ... if the parties have not stipulated to the deposition and ... the deponent has already been deposed in [the] case[.]" Fed.R.Civ.P. 30(a)(2)(A)(ii).[3]

After the 1993 amendment, many district courts simply followed the directive of Rule 30(a)(2) by considering the principles set out in Rule 26(b)(2) in deciding whether they must grant leave. *See e.g.*, *Collins v. Int'l Dairy Queen*, 189 F.R.D. 496, 498 (M.D.Ga. 1999); *Keck v. Union Bank of Switzerland*, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997); *Hurley v. JARC Builders*, 164 F.R.D. 39, 40 (E.D.Pa.1995). Rule 26(b)(2) bestows on a court the authority to limit discovery if it is: (1) unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive; (2) the person seeking the discovery has had ample opportunity already to obtain the same information; or (3) the burden or expense of taking the discovery outweighs its likely benefit. *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. September 21, 2011) (citations omitted). Consequently, the purpose of Rule 26(b)(2) is "to guard against redundant or disproportionate discovery." *Benson v. Giordano*, 2007 WL 2355783, at *2–3 (D.S.D. August 17, 2007) (citing Fed.

**2.** Typically, before the 1993 amendment to Rule 30, the opposing party, either by filing a motion for a protective order or responding to a motion to compel, would have to demonstrate "good cause" under Federal Rule 26(c)(1) before a court would intervene and prevent the reopening of a deposition. *See e.g.*, *Tramm v. Porter Memorial Hosp.*, 128 F.R.D. 666, 668 (N.D.Ind.1989) (stating that "party opposing the deposition must demonstrate 'good cause for a protective order.'"). More specifically, a party seeking to avoid the reopening a deposition would have to establish (with sufficient particularity) annoyance, embarrassment, oppression, or undue bur-

den. *See Caplan v. Fellheimer Eichen Braverman & Kaskey*, 161 F.R.D. 29, 31 n. 2 (E.D.Pa.1995) (citing Rule 26(c); *Perry v. Kelly–Springfield Tire Co.*, 117 F.R.D. 425, 426 (N.D.Ind.1987)). In fact, before the amendment, "a strong showing [was] required before a party [would] be denied the right to take a deposition." *Deines v. Vermeer Mfg. Co.*, 133 F.R.D. 46, 47 (D.Kan.1990).

**3.** This provision was added to Rule 30 as part of the 1993 amendments. Fed.R.Civ.P. 30 advisory committee's notes, 1993 Amendments.

R.Civ.P. 30 advisory committee's notes, 1983 amendments).

▮ Courts have typically reopened a deposition "where a witness was inhibited from providing full information at the first deposition" or "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck,* 1997 WL 411931, at *1 (citations omitted).[4] However, "[w]here the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information." *Ganci v. U.S. Limousine Serv., Ltd.,* 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (citations omitted). In fact, it should be noted that the lack of diligence in obtaining information before the initial or first deposition may result in a court denying leave to conduct a second deposition. *See Fresenius Med. Care Holdings, Inc. v. Roxane,* 2007 WL 764302, at *2 (S.D.Ohio March 9, 2007) (citing *Lowery v. Noble Drilling Corp.,* 1997 WL 675328 (E.D.La. Oct. 29, 1997)).

▮ Then, in 2000, Rule 30 was further amended, setting limitations on the duration of a deposition. Rule 30(d)(1) states that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." *See* Fed.R.Civ.P. 30(d)(1). As a result, a party seeking a court order to extend the duration of the examination must show "good cause" to justify such an order. *Pratt v. Archstone Willow Glen Apartments,* 2009 WL 2032469, *1 (N.D.Cal. July 10, 2009); *Boston Scientific Corp. v. Cordis Corp.,* 2004 WL 1945643, at *2 (N.D.Cal. Sept. 1, 2004);

*Cardenas v. The Prudential Ins. Co. of Am.,* 2003 WL 21302960, at *2 (D.Minn. May 16, 2003); *see* Fed.R.Civ.P. 30 advisory committee's notes, 2000 Amendments (party seeking court order to extend examination expected to show "good cause"); *see also, Morrison v. Stephenson,* 2008 WL 145017, at *1, 3 (S.D.Ohio Jan. 10, 2008) (applying the "good cause" standard in denying a second deposition of a witness); *Benson v. Giordano,* 2007 WL 2355783, at *2–3 (D.S.D. August 17, 2007) (granting a second deposition utilizing "good cause" standard).

Notably, Rule 30(d)(1), similar to Rule 30(a)(2), requires a court to guard against redundant or disproportionate discovery, stating that any additional deposition time must be consistent with Rule 26(b)(2). However, unlike Rule 30(a)(2), Rule 30(d)(1) provides more guidance, setting out that "[t]he court must allow additional time ... if needed to fairly examine the deponent or if deponent, another person, or any other circumstance impedes or delays the examination." Fed.R.Civ.P. 30(d)(1). In deciding whether there has been a fair examination, the court may consider factors such as: (1) if the examination will cover events occurring over a long period of time; and (2) the need for each party to examine the witness in multi-party cases.[5] Fed.R.Civ.P. 30 advisory committee's notes, 2000 Amendments.

### III. DISCUSSION

#### A. Defendants' Motion for Leave to Take Second Deposition of Plaintiff

In the individual Defendants' motion, counsel (generally) argues that seven hours were

---

4. Courts have found "new information," justifying the reopening a deposition, where (1) new parties were added to the case, (2) new allegations were made in the pleadings, and (3) new documents were produced. *Id.* (citations omitted). *See Archer Daniels Midland Co. v. Hartford Fire Ins. Co.,* 243 F.3d 369, 374–5 (7th Cir.2001) (court concluded that had trial court allowed plaintiff to amend complaint to allege fraud, it would have been necessary to reopen discovery and take depositions of persons already deposed); *Flomo v. Bridgestone Am.'s Holding, Inc.,* No. 1:06–cv–000627–WTL–JMS, 2009 WL 4728018, at *2 (S.D.Ind. Dec. 4, 2009) (where new affidavit conflicted with previously filed affidavit, court allowed reopening of depositions to explore how affidavits from an individual were obtained); *Christy v. Pennsylvania Turnpike*

*Com'n,* 160 F.R.D. 49, 51 (E.D.Pa.1995) (second deposition based on new parties and new allegations); *see also, Morrison v. Stephenson,* 2008 WL 145017 (S.D.Ohio January 10, 2008) (stating that "new information comes to light ..., [when] new parties are added to the case, new allegations are made in pleadings, or new documents are produced, ....") (citing *Keck,* 1997 WL 411931 (S.D.N.Y. July 22, 1997)).

5. In multi-party cases, "duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest." Fed. R.Civ.P. 30 advisory committee's notes, 2000 Amendments.

not sufficient to adequately examine all of Plaintiff's allegations against the individual Defendants. (*See* Dkt. No. 135, ¶¶ 9–14). Counsel further (generally) adds that there was not sufficient time to question Plaintiff regarding "dozens of persons" of which Plaintiff identified as having knowledge of relevant facts in this case. (*See id.*). Moreover, counsel tells the Court that, for at least two of the individual Defendants, Plaintiff needs to be questioned regarding a letter with attachments (originally identified at page 189 of Plaintiff's deposition), which was not available at the deposition. (*Id.* at ¶¶ 9–10). Finally, counsel points to Mr. Brocato's affidavit stating that, due to the large number of relevant exhibits and the time it took Plaintiff (with his attorney) to review them, there was not sufficient time to question, in detail, the factual allegations related to all ten individual Defendants. (*Id.* at ¶ 15).

In Plaintiff's response, he primarily sets out various assertions that he believes demonstrate that a second deposition would be cumulative and duplicative. (*See* Dkt. No. 140, ¶¶ 6–13). In other words, Plaintiff argues that Defendants have already deposed him in this matter, and that Mr. Brocato and Ms. Sanchez had a sufficient opportunity to depose him. To support his contention, Plaintiff informs the Court about the length of the deposition and various incidents in which Mr. Brocato and Ms. Sanchez's actions prolonged the deposition. (*Id.* at ¶ 6). Plaintiff further states that "the fact that Mr. Brocato asked questions on behalf of all Defendants that are different than the questions current counsel would like to ask does not mean that Mr. Brocato did not address all of the issues sufficiently." (*Id.* at ¶ 12).

Next, Plaintiff makes various other assertions that he believes support his position against reopening his deposition. For example, Plaintiff contends that Defendants could have better utilized their subsequently filed (February 24th) interrogatories to question him on areas that were not (allegedly) addressed in the deposition. (*Id.* at ¶ 9). Moreover, Plaintiff points out that, contrary

to opposing counsel's assertion relating to page 189 of his deposition, there is "no mention of any letter—with or without attachments." (*Id.* at ¶ 13). Lastly, Plaintiff asserts that his claims (in his complaint) are set out "with such clarity and with such great detail" that any question that Defendant might ask in a subsequent deposition has already been answered. (*Id.* at ¶ 13).

■ For the reasons stated below, the Court finds that leave to reopen Plaintiff's deposition and to extend that deposition beyond the original seven hours should be allowed. Here, the Court notes that Plaintiff has sued Defendant TXDOT and ten individual Defendants. The Court further notes that Plaintiff's complaint is seventy pages long, setting out numerous allegations against the Defendants relating to many incidents that occurred during Plaintiff's four-year employment at TXDOT. In the instant motion, current counsel seeks to examine Plaintiff on both (1) specific areas not covered (in detail) by Mr. Brocato in the previous deposition, and (2) new information that was not available to Mr. Brocato at the previous deposition. For example, at the April 12th hearing, Ms. Bonnie C. Lockhart ("Ms. Lockhart"), counsel for Defendants Garza and Salgado, stated that Mr. Brocato did not have enough time to go into the specific allegations against the individual Defendants. (April 12, 2012 Motions Hearing at 9:36 a.m.). She further stated that, as a result of Plaintiff's disclosure of certain information during his examination of Defendant Naomi Flores [6] and Ms. Ofelia Noriega, Defendants would like to question Plaintiff about either (1) statements Plaintiff may have obtained, or (2) discussions Plaintiff may have had with people who have made statements. (*Id.* at 9:37 a.m.). Moreover, Ms. Lockhart informed the Court that allegations of "falsification of documents" and of "hiding documents" were not covered during Plaintiff's first deposition. (*Id.*). Regarding the above-mentioned letter with attachments that was unavailable for questioning at Plaintiff's deposition, Ms. Lockhart clarified, at the

---

6. While the timing of these depositions were not mentioned at the April 12th hearing, the Court notes from previous motions on the docket that,

at least Defendant Flores's deposition was taken after Plaintiff's deposition. (*See* Dkt. No. 127, Ex. 1, p. 1).

April 12th hearing, that Plaintiff had sent a letter with exhibits to Mr. Amadeo Saenz. (*Id.* at 9:37–9:38 a.m.). She further clarified that this document was mentioned on pages 159–160 of Plaintiff's deposition—not page 189. (*Id.*). These are all reasons to allow additional deposition time.

Moreover, the Court is not persuaded by Plaintiff's contentions that (1) Defendants could have better utilized their subsequently filed (February 24th) interrogatories to address areas not reached (allegedly) in the deposition; or (2) Plaintiff's complaint was pleaded with such "clarity and with such great detail" that it precludes the need for a "subsequent deposition." (Dkt. No. 140, at ¶¶ 9, 13). While the Court recognizes that in many instances interrogatories and depositions can be utilized to obtain the same information in a lawsuit, these two methods of discovery are not necessarily equivalent. That is, the use of interrogatories may have disadvantages. For example, interrogatories do not provide subjective information, such as the demeanor of the responding party. *See Oscar Gruss & Son v. Lumbermens Mut. Cas. Co.*, 41 F.R.D. 279, 282 (S.D.N.Y.1966) (demeanor of witnesses recognized as "highly useful, even if not infallible, method of ascertaining the truth and accuracy of their narratives"); 7 James Wm. Moore et al., *Moore's Federal Practice–Civil* ¶ 33.05 (3d ed. 2012). Further, interrogatories can be ineffective in obtaining complex or possibly confusing information. *See Oscar Gruss & Son*, 41 F.R.D. at 282 (cross-interrogatories as a means of appropriate cross-examination was found inadequate in case concerning numerous transactions and hundreds of documents); *V.O. Machinoimport v. Clark Equipment Co.*, 11 F.R.D. 55, 58 (S.D.N.Y. 1951) (greater need for face-to-face questioning of plaintiff and its officers in case where issues concern technical and complex problems); Moore, *supra*, ¶ 33.05. Moreover, depositions have more flexibility than interrogatories because they permit an attorney to ask follow-up questions based on answers to previous questions or repeat questions if a deponent is being evasive. *See Oscar Gruss & Son*, 41 F.R.D. at 282; *V.O. Machinoimport*, 11 F.R.D. at 58 (cross-examination of witness who may be evasive, recalcitrant or non-responsive to questions "essential in ferreting out facts, particularly of an adverse party or witness"); Moore, *supra*, ¶ 33.05. As such, the Court recognizes that there are important considerations for a party when utilizing its discretion in using interrogatories or depositions independently, simultaneously or consecutively as required. *See V.O. Machinoimport*, 11 F.R.D. at 60; Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2169 (3d ed. 2011) (current attitudes towards interrogatories and depositions do not suggest any hierarchy of discovery methods).

 Likewise, while the Court recognizes that Plaintiff has pleaded his complaint with specificity, it cannot presuppose that it is unnecessary for the individual Defendants to question Plaintiff (for a second time) regarding his allegations. As noted above, the primary focus in determining whether to grant leave to reopen Plaintiff's deposition is not whether Plaintiff claims are plead "with such clarity and with such great detail," but whether the questioning at a second deposition would be unreasonably cumulative and whether there was a fair examination of Plaintiff at his previous deposition. Moreover, the Court further notes that, while one purpose of a deposition is for basic discovery, it is also utilized for the preservation of information, for the establishment of facts crucial to settlement or rulings on pretrial motions, and for potential impeachment purposes if a witness's testimony deviates at trial. Moore, *supra*, ¶ 30.02.

As such, Defendants have shown that "good cause" [7] exists to grant leave to reopen

7. The Court notes that, unlike Rule 30(d)(1) where the advisory committee's notes state that a "good cause" standard applies when making a determination of whether a deposition should exceed the rule's duration limit, it is not explicit in either Rule 30(a)(2) or its advisory committee's notes that a "good cause" standard applies when determining whether to reopen or retake a deposition. However, this Court notes that other district courts have utilized a "good cause" standard when making such a determination pursuant to Rule 30(a)(2)(A)(ii). *See EEOC v. Holmes & Holmes Ind., Inc.*, 2011 WL 6069306, at *2 (D.Utah Dec. 6, 2011); *Morrison v. Stephenson,*

Plaintiff's examination and to extend Plaintiff's examination beyond Rule 30(d)'s prescribed limit of seven hours. It does not appear to the Court that the individual Defendants' proposed areas of questioning will be unreasonably cumulative or duplicative. Further, this does not appear to be a case where Defendants have had ample opportunity to obtain the information, or where the burden or expense of taking Plaintiff's second deposition outweighs its likely benefits.

### B. Plaintiff's Motion for Protective Order and Motion to Quash

■ Plaintiff moves for a protective order asking the Court to deny the instant motion, or in the alternative, to delay Defendants' second examination of Plaintiff until they have "produced the documents requested by Plaintiff, made good faith answers to the interrogatories propounded by Plaintiff, and withdrawn Defendants' baseless objections." (*See* Dkt. No. 140, ¶ 18). Federal Rule of Civil Procedure 26(c) provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. Proc. 26(c)(1).

The Court finds that Plaintiff has not shown with sufficient particularity that he would suffer the type of annoyance, embarrassment, oppression, or undue burden or expense that would entitle him to a protective order—preventing the reopening of his deposition. However, the Court is concerned that, due to unresolved discovery disputes, Plaintiff still may be entitled to substantial discovery. Still pending before the Court is Plaintiff's request for production of electronically stored information and his "motion for reconsideration of certain discovery orders" (Dkt. No. 135). in the near future, the Court will resolve these disputes and set a deadline for the parties to comply with their obligations.[8] On balance, there is nothing unreasonable with Plaintiff's request that his second deposition occur after Defendants have complied with their discovery obligations. As such, Plaintiff's motion for a protective order (Dkt. No. 140) is GRANTED IN PART AND DENIED IN PART. Defendants should wait to notice Plaintiff for his deposition until after they have complied with their discovery obligations as set out in the Court's forthcoming orders. In light of this ruling, Plaintiff's request to quash the deposition notice (Dkt. No. 140) is DENIED AS MOOT.

## IV. CONCLUSION

For the reasons stated in Section III(A), "Defendants' Opposed Motion for Reconsideration of Order Denying Defendants' Motion for Leave to Take Oral Deposition of Plaintiff." (Dkt. No. 135) is GRANTED. During this second and *final* deposition of Plaintiff, all Defendants, including Defendant TXDOT and any of the individual Defendants, may ask questions. However, Plaintiff's examination will be limited to five hours of additional questioning. Finally, Defendants should wait until after they have complied with their discovery obligations as set out in the Court's forthcoming orders before noticing Plaintiff for the deposition.

IT IS SO ORDERED.

2008 WL 145017 at *13 (S.D.Ohio Jan. 10, 2008) (applying the "good cause" standard in denying a second deposition of a witness); *Benson v. Giordano*, 2007 WL 2355783, at *2–3 (D.S.D. August 17, 2007) (granting a second deposition utilizing "good cause" standard). Moreover, this Court recognizes that a majority of district courts utilize a "good cause" standard when making a similar determination of under Rule 30(a)(2)(A)(iii), when deciding whether to grant leave to for a party to take a deposition before the time specified in Rule 26(d). *See St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239 (S.D.Tex.2011).

**8.** The deadline will encompass the TXDOT's representation to the Court that it will make available for Plaintiff's inspection of original documents in Austin, Texas, upon the Court's disposition of the remaining discovery issues. (February 3, 2012 Motion Hearing at 2:09:00).